NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EVE ANN FRUGARD, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civ. No. 08-5119 (GEB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| JENNIFER VELEZ, COMMISSIONER, | : | |
| NEW JERSEY DEPARTMENT | : | |
| OF HUMAN SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for preliminary injunction filed by Plaintiffs Eve Ann Frugard, Emily Barto, and Justine Beese ("Plaintiffs") (Doc. No. 20), which was converted to a summary judgment motion during oral arguments on September 8, 2009 (Doc. No. 23). The motion is opposed by Defendants Jennifer Velez and John R. Guhl ("Defendants"). The Court has considered the parties' submissions, and for the reasons that follow will grant Plaintiffs' motion and enter a permanent injunction.

**I.   BACKGROUND**

On October 17, 2008, Plaintiffs filed a complaint in this Court pursuant to 42 U.S.C. § 1983, and therein allege that Defendants, acting in their official capacities as N.J. state administrators, violated Plaintiffs' rights under the Medicaid Act, 42 U.S.C. §§ 1396-1396v. (Compl.; Doc. No. 1.)  The complaint states that Plaintiffs Frugard, Barto, and Beese each: (1)

are N.J. residents; (2) are over age 65; (3) live in an assisted living residence; (4) have less than $2,000 in countable resources; and (5) have countable income below the relevant Medicaid income cap. (Compl. ¶¶ 4, 26, 30, 31, 32; Doc. No. 1)  Further, at various times after February 8, 2006, Plaintiffs each applied for benefits under New Jersey's Medicaid Home-and-Community-Based Services ("HCB-services") program pursuant to New Jersey's Enhanced Community Options Waiver ("ECO") program.  Each Plaintiff, however, made an uncompensated asset transfer during the five-year "look-back" period established by 42 U.S.C. § 1396p(c)(1)(B)(i). (Compl. ¶¶ 3, 24; Doc. No. 1.)  The look-back period is a time period during which the applicant has their assets scrutinized to ensure that they did not dispose of or transfer assets for less than fair market value in order to qualify for Medicaid.   If an asset is transferred for less than fair market value during the look-back period, a penalty period of ineligibility for Medicaid is imposed.  Plaintiffs allege that:

> [t]he local county boards of social services, which contracted with [the New Jersey Division of Medical Assistance and Health Services] to administer the Medicaid program in New Jersey, N.J.A.C. § 10:71-1.5, processed plaintiffs' applications for HCB-services and denied each of the plaintiffs' applications for HCB-services, imposing <u>penalty</u>, but not a <u>penalty period</u>, against each of the plaintiffs due to their uncompensated transfers made during the lookback period.

(Compl. ¶ 38; Doc. No. 1) (emphasis in original).

Each Plaintiff filed an administrative appeal of the local county board's denial of their HCB-services application, and those appeals were ultimately consolidated. (Compl. ¶¶ 39, 40; Doc. No. 1.)  Administrative Law Judge Joseph Paone heard Plaintiffs' consolidated appeal and on April 9, 2008, issued a decision that recommended reversal of the denial of Plaintiffs' HCB-services applications.  (*Id.* ¶ 42.)  ALJ Paone further recommended the imposition of a penalty

period against each Plaintiff pursuant to 42 U.S.C. § 1396p due to Plaintiffs' uncompensated asset transfers.  (*Id.*)

ALJ Paone's decision was subsequently reviewed and rejected by Defendant Guhl in a final agency decision issued on July 14, 2008.  (*Id.* ¶¶ 44.)  In light of the July 14, 2008 final agency decision issued by Defendant Guhl, Plaintiffs contend that:

> Defendants' policy is that the federal Medicaid Act's transfer of asset rule, 42 U.S.C. § 1396p(c)(1)(A), as modified by [the Deficit Reduction Act of 2005 ("DRA"), P.L. 109-171 section 6011(b)(2)] requires the various states to penalize applicants for HCB-services who make uncompensated transfers of assets during the lookback period but does not require the states to begin a <u>penalty period</u> against such an applicant unless the applicant "<u>is receiving</u>" waiver services <u>actually paid for by a HCB-services program</u>.
> . . . .
> Stated otherwise, according to defendants, before a penalty period can begin, an <u>applicant</u> for a HCB-services program <u>must actually be receiving</u> HCB-services <u>paid for</u> by the HCB-services program for which the <u>applicant</u> is applying. According to defendants, since an applicant who has made an uncompensated transfer of an asset during the lookback period cannot qualify for a HCB-services program and, therefore, cannot be receiving HCB-services actually paid for by the HCB-services program for which she is applying, a penalty period cannot begin.

(Compl. ¶¶ 46, 47; Doc. No. 1) (emphasis in original).

Plaintiffs did not appeal Defendant Guhl's July 14, 2008 final agency decision to the Appellate Division of the New Jersey Superior Court as permitted pursuant to New Jersey Court Rule 2:2-3(a)(2).  Rather, Plaintiffs filed the present complaint in this Court pursuant to § 1983. Additionally, it is undisputed that none of the Plaintiffs have applied for a "hardship waiver" pursuant to 42 U.S.C. § 1396p(c)(2)(D).

In the complaint, Plaintiffs lodge two claims against Defendants based upon the foregoing factual allegations.  First, Plaintiffs claim that Defendants' actions, "violate federal Medicaid law

3

by failing to impose a penalty period against individuals who made transfers of assets and who are applying for HCB-services." (Compl. ¶ 56; Doc. No. 1.)  Specifically, Plaintiffs' allege Defendants' actions violate their rights under the Supremacy Clause of the U.S. Constitution and 42 U.S.C. § 1396p(c)(1). (*Id.*)  Second, Plaintiffs claim that Defendants' actions, "violate the federal Medicaid Act by using a methodology for assessing income and resource eligibility for applicants applying for HCB-services that is more restrictive than the methodology used to determine income and resource eligibility under the [Supplemental Security Income program ("SSI"), 42 U.S.C. § 1381 et seq.]." (Compl. ¶ 58; Doc. No. 1.)  Plaintiffs allege Defendants' actions violate their rights under the Supremacy Clause of the U.S. Constitution, 42 U.S.C. § 1396p(c)(1), and 42 U.S.C. § 1396a(r)(2)(A).  (*Id.*)  Plaintiffs seek the following remedies in this Court pursuant to 42 U.S.C. § 1983 for these alleged violations: (1) "a declar[ation] that the defendants' policy of imposing a penalty, but not a penalty period, is and has been illegal, null, and void"; (2) an order that Defendants determine and impose a penalty period against each Plaintiff pursuant to 42 U.S.C. § 1396p(c)(1)(D(ii); and (3) attorney fees pursuant to 42 U.S.C. § 1988."  (Compl. at 14; Doc. No. 1.)

In lieu of an answer, Defendants filed a motion to dismiss Plaintiffs' complaint  pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 11.)  The Court held oral argument on Defendants' motion to dismiss on September 8, 2009, and denied it for the reasons stated on the record. (Doc. No. 23.)

Shortly before the oral argument, Plaintiffs filed a motion for a preliminary injunction on August 6, 2009.   In support of their motion, Plaintiffs argued they established the following four elements necessary under Third Circuit jurisprudence for the extraordinary measure of injunctive

4

relief: (1) that Plaintiffs are likely to succeed on the merits of their claims; (2) that Plaintiffs will suffer irreparable harm in the absence of an injunction; (3) that granting the injunction will not cause irreparable harm to Defendants; and (4) that granting the injunction is in the public interest. (Doc. No. 20.)  In opposition, Defendants argued that Plaintiffs have failed to establish each necessary element, and assert that Plaintiffs' claims fail as a matter of law.  The Court denied the motion for preliminary injunction because it was not emergent. (Doc. No. 23.)  At oral argument, the parties conceded that there were no issues of material fact.  As such, the Court converted Plaintiff's motion for preliminary injunction to the present motion for summary judgment.

## II.  DISCUSSION

### A.  Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);  *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*,

811 F.2d 225, 231 (3d Cir. 1987).

      **B.     Application**

      It is undisputed that the Plaintiffs made uncompensated transfers of assets after February 8, 2006, during the look back period. (Pls.' Br. at 1; Doc. No. 20.) It is further undisputed that Plaintiffs have each been denied Medicaid benefits under their respective community-based services Medicaid waiver programs as a result of the transfers. (*Id.* at 21.) Plaintiffs argue that the penalty period should begin to run the month the uncompensated transfer of the asset was made, while Defendants contend that the penalty period cannot run until the expiration of the look back period. (Pls.' Br. at 18; Defs.' Br. at 19.)

      The controlling subclause comes from the Deficit Reduction Act of 2005 ("DRA"), which added 42 U.S.C. § 1396p(c)(1)(D)(ii) to the Medicaid Act. This subclause states that, for asset transfers such as these, the periods of ineligibility must commence:

> the first day of a month during or after which assets have been transferred for less than fair market value, or the date on which the individual is eligible for medical assistance under the State plan and would otherwise be receiving institutional level care described in subparagraph (C) [a community-based waiver service] based on an approved application for such care but for the application of the penalty period, whichever is later, and which does not occur during any other period of ineligibility under this subsection.

42 U.S.C. § 1396p(c)(1)(D)(ii).

      Plaintiffs argue that the plain language of this statute means that the penalty period should begin (1) the month after the assets have been transferred, or (2) the date on which the individual is eligible for medical assistance <u>and would otherwise be receiving</u> the assistance but for the application of the penalty period. (Pls.' Br. at 18; Doc. No. 20) (emphasis added). Defendants argue that the penalty period cannot start until an applicant is eligible for medical assistance <u>and</u>

6

<u>is actually receiving community-based waiver services</u>. (Defs.' Br. at 19; Doc. No. 21) (emphasis added). Defendants' position is plainly an incorrect reading of the statute. Defendants ignore the language "and would otherwise be" in the statute and incorrectly replace it with the word "is," to require the applicant to actually be receiving community-based waiver services before the penalty period can begin. This is an improper and incorrect reading of the plain language of the statute. In support of their position, Defendants rely on an enclosure that accompanied a letter to the State Medicaid Director from the Centers for Medicare and Medicaid Services ("CMS"), dated July 27, 2006, which reads:

> For transfers of assets made on or after February 8, 2006, the period of ineligibility will begin with the . . . date on which the individual is eligible for medical assistance under the State plan and <u>is</u> receiving institutional level of care services . . . that, were it not for the imposition of the penalty period, would be covered by Medicaid. (emphasis added)

Clearly, this enclosure misquotes the statute and is not controlling law in any way.

Further, the legislative history of 42 U.S.C. § 1396p(c)(1)(D)(ii) suggests that Congress was aware that an applicant for benefits could not be receiving waiver services before applying for those services. A proposed House bill originally specified the beginning date for eligibility to be "[t]he date on which the individual is eligible for medical assistance under the State plan and <u>is receiving services</u> described in subparagraph (C) based on an approved application for such care but for the application of the penalty period." 151 Cong. Rec. H10571 (daily ed. Nov. 17, 2005) (emphasis added). Because a draft bill contained the phrase "is receiving services" which was later changed to "would otherwise be receiving services," it is clear that Congress realized the Gordian Knot that would develop if applicants were required to already be receiving benefits in order to apply for benefits.

7

According to the plain-language canon of statutory construction, the statute means what it says "and no further search is necessary or appropriate in the absence of clear ambiguity." *In re M.G.*, 307 N.J. Super. 348, 354 (App. Div. 1998). Because the Court concludes that the statute is not ambiguous, the plain meaning of 42 U.S.C. § 1396p(c)(1)(D)(ii) will control. The penalty period should have begun on the date the Plaintiffs were eligible for medical assistance under the State plan. The Court agrees with the thoughtful and well-written opinion of Administrative Law Judge Joseph Paone.

Regarding Plaintiffs' application for attorney fees under 42 U.S.C. § 1988(b), it will be determined whether attorney fees are appropriate at a hearing to be conducted on April 21, 2010 at 11am.

### III. CONCLUSION

For the reasons stated herein, the Court will grant Plaintiffs' motion for summary judgment, and the Court will issue a permanent injunction. The parties are directed to confer on a form of order and submit it to the Court.

Dated: April 8, 2010

                                                  s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.